**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bombardier Transportation (Holdings) USA Incorporated,<br><br>        Plaintiff,<br><br>vs.<br><br>HDR Engineering Incorporated, et al.,<br><br>        Defendants. | No. CV-21-01460-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant HDR Engineering Inc.'s Motion to Exclude Opinions of Robert S. Vecchio (Doc. 143). The Motion has been fully briefed (Docs. 162, 164), and the Court rules as follows.[1]

**I.     BACKGROUND**

Plaintiff Bombardier Transportation (Holdings) USA Inc. alleges one count of breach of contract against Defendant HDR Engineering Inc., the only Defendant remaining in this action. (Doc. 105). In 2009, Plaintiff contracted with the City of Phoenix "to design, build, operate, and maintain" the Phoenix Sky Harbor International Airport PHX Sky Train System (the "PHX Sky Train System"). (Doc. 105 at 2). In January 2013, Plaintiff "discovered the failure of expansion joint concrete plinths" in several Type 2 and Type 3 expansion joints (the "Original Failures"). (Doc. 105 at 4).

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

The expansion joints in the PHX Sky Train System consist of steel ride plates anchored to concrete plinths. (Doc. 105 at 3). In February 2013, Plaintiff engaged Defendant under their Master Services Agreement ("MSA") and Purchase Order No. 4500546120 (the "Purchase Order"). (Doc. 105 at 5). The Purchase Order reflects that it was "for the Type 2 and Type 3 running plinth expansion joints installed for the PHX Sky Train System" and called for Defendant to perform various tasks, including "an independent review of the original design," "to develop Type 2 and Type 3 running plinth expansion joint retrofit/replacement options," and to "prepare a report that defines the root cause of the Type 2 and Type 3 running plinth expansion joint failures." (Doc. 143-1 at 31–33). Defendant performed the independent review, identified design deficiencies, determined that the Original Failures resulted from the defective design of the concrete plinths, and concluded that the existing Type 2 and Type 3 concrete plinths needed to be redesigned and reconstructed. (Doc. 105 at 6). Defendant also determined that 12 of 24 ride plates needed to be replaced but did not redesign the ride plates or anchoring studs. (Doc. 105 at 6). Plaintiff implemented Defendant's plan for fixing the Original Failures. (Doc. 105 at 6).

In September 2020 through January 2021, several Type 3 expansion joint ride plate failures occurred, this time due to failures in the ride plate anchoring studs (the "Recent Failures"). (Doc. 105 at 7). Plaintiff alleges that Defendant should have discovered the deficiencies in the anchoring studs during its 2013 review and breached the MSA and Purchase Order by providing negligent, defective, or incomplete work. (Doc. 105 at 11). Defendant argues in part that the design of the anchoring studs was beyond the scope of the work required by the Purchase Order. (Doc. 143 at 8–9). In the instant Motion, Defendant argues for the exclusion of Plaintiff's engineering expert, Dr. Robert S. Vecchio. (Doc. 143).

## II.     LEGAL STANDARD

Federal Rule of Evidence ("FRE") 702 permits parties to file motions to exclude to ensure relevance and reliability of expert testimony. *See Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 152–53 (1999). FRE 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule imposes on the trial courts a gatekeeping obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Whether the expert is appropriately qualified, whether her testimony is relevant, and whether her testimony is reliable are all distinct inquiries under Rule 702." *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2019 WL 2080143, at *1 (D. Ariz. May 10, 2019).

The proponent of the expert evidence has the burden of proving the expert's testimony is admissible under FRE 702 and the *Daubert* standard. *Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 989 (D. Ariz. 2000). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* When the expert does not meet the threshold, the Court may prevent him from providing testimony. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

### III.   DISCUSSION

Defendant makes a variety of arguments for the exclusion of Dr. Vecchio's testimony, including that it is unreliable and unhelpful. First, Defendant argues that the Court should exclude Dr. Vecchio's testimony because he opines on the scope of Defendant's duties under the Purchase Order, which is a question of contract

interpretation that is an improper subject for expert testimony. "Unless a contract is deemed ambiguous or there is a term of the contract that requires an expert's explanation, it is improper for an expert to interpret or construe a contract in his opinion." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1320 (S.D. Cal. 2020) (citing *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999)). But as Plaintiff highlights, under Pennsylvania law, which the parties agree governs the Purchase Order, "even absent an ambiguity, a court may consider evidence of custom in the industry or usage in the trade." *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281, 2011 WL 204519, at *7 (E.D. Pa. Jan. 20, 2011); *see also Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001) ("In the law of contracts, custom in the industry or usage in the trade is always relevant and admissible in construing commercial contracts and does not depend on any obvious ambiguity in the words of the contract."). Thus, courts applying Pennsylvania law permit expert testimony regarding industry custom and trade usage of terms in a contract. *See Nationwide*, 2011 WL 204519, at *7; *T.N. Inc., Ltd. v. Fidelity Nat'l Info. Servs., Inc.*, No. 18-5552, 2021 WL 5980048, at *13 (E.D. Pa. Dec. 17, 2021). Such testimony may not, however, go to "the legal effect of a document, the drafters' intent or other aspects of contract interpretation that belong squarely in the realm of law." *T.N. Inc.*, 2021 WL 5980048, at *14; *see also Aya Healthcare Servs.*, 613 F. Supp. 3d at 1320–21.

Expert testimony as to industry custom or trade usage must, like any other expert testimony, be based on the expert's skill, knowledge, experience, appropriate industry sources, or other permissible bases. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."). For example, in *Nationwide*, an expert was permitted to testify to conclusions he reached about terms in a contract based on "his own experience, title insurers' underwriting manuals, bulletins, articles by leading title insurers, leading treatises, and the general practice of underwriting employees," but was precluded from

testifying to his definition of a term that was based "almost exclusively [on] legal sources such as the Restatement, Pennsylvania state legal journals, and case law." *Nationwide*, 2011 WL 204519, at *14. Similarly, in *T.N. Inc.*, an expert was permitted to testify to his opinions on a contract where his opinions "rel[ied] on a combination of his technical skill and his knowledge of the customary practices . . . concerning open-source software licenses." *T.N. Inc.*, 2021 WL 5980048, at *13.

Thus, while it *may* have been permissible for Dr. Vecchio to opine on the meaning of "Type 2 and Type 3 running plinth expansion joint" in the Purchase Order based on his knowledge of and experience in the engineering consulting industry as Plaintiff suggests, (Doc. 162 at 8), that is simply not the type of opinion that is before the Court. Unlike in *Nationwide* and *T.N. Inc.* where the courts could discern the knowledge, experience, and sources on which the experts relied, in this case, the Court can discern *no* proper basis for Dr. Vecchio's opinions on the scope of the Purchase Order. Instead, Dr. Vecchio's report merely states, "As shown in an excerpt of the purchase order for these services (see Figure 3-9), Task 2 was concerned with the development of a retrofit or replacement option for both the Type 2 and 3 ride plate assemblies, as well [as] checking the anchorages of various abutments and abutment expansion joints."[2] (Doc. 143-6 at 20). Except for excerpting the Purchase Order in Figure 3-9, nowhere does the report discuss the language of the Purchase Order, define any terms contained therein, explain industry customs with respect to similar purchase orders, or otherwise explain Dr. Vecchio's interpretation of the scope of Task 2. Absent any such discussion, Plaintiff has failed to show that Dr. Vecchio's opinions are grounded in his knowledge or experience in engineering, or that they are the product of reliable principles and methods concerning industry custom or trade usage.

In fact, it appears that Dr. Vecchio's opinion concerning the scope of Defendant's obligations under the Purchase Order was not *his* opinion at all but rather that of

---

[2] Figure 3-9 of Dr. Vecchio's report shows relevant excerpts of the Purchase Order.

Plaintiff's counsel. The Executive Summary to Dr. Vecchio's report states that Defendant "was retained to review the design of the ride plates, determine the root cause of failure and provide design support for the development of retrofits, as necessary." (Doc. 143-6 at 3). When asked about the basis for that statement during his deposition, Dr. Vecchio testified that it "is our understanding based on our discussions with counsel." (Doc. 143-8 at 6). Dr. Vecchio's deposition testimony negates Plaintiff's *post hoc* argument that Dr. Vecchio's purported opinions regarding Defendant's duties under the Purchase Order are a product of his knowledge and experience in the engineering industry. Instead, his deposition testimony shows that the report merely parrots the opinions of Plaintiff's counsel regarding the scope of the contract. Plaintiff cannot prove its preferred reading of the Purchase Order merely by having an expert witness state it.

Plaintiff cites to *Elosu v. Middlefork Ranch, Inc.* in arguing that reliance on statements from counsel does not make Dr. Vecchio's opinions unreliable, but that is a gross misapplication of *Elosu*. 26 F.4th 1017 (9th Cir. 2022). The issue in *Elosu* was "the scope of a district court's discretion to exclude expert testimony that it deems unsupported by the record." *Id.* at 1023. The district court in that case excluded an expert's testimony based on its finding that the expert's "report [was] too speculative, that his conclusion conflicted with the contractors' testimony, and that he relied too heavily on the testimony of the plaintiffs." *Id.* The Ninth Circuit reversed, holding that the district court's "concerns speak to corroboration, not foundation, and are properly addressed through impeachment before a jury at trial—not exclusion by a district judge at the admissibility stage." *Id.* at 1023–24. The Ninth Circuit found that the district court had improperly assumed a factfinding role, overlooking the expert's scientific analysis and weighing evidence to discredit the expert's conclusions. *Id.* at 1027.

In contrast, here, the Court finds not that Dr. Vecchio's opinions on the scope of the Purchase Order are unsupported by the record but rather that they are not the product of reliable principles or methods—which was explicitly not at issue in *Elosu*. *Id.* at 1023. Still, this Court is concerned too with the foundation for Dr. Vecchio's opinions, which

appears to be not his own expertise, but the statements of counsel. Dr. Vecchio provides *no* analysis or explanation of how he reached his conclusion on the scope of the Purchase Order, seemingly because *he* did not reach such a conclusion; it was his "understanding based on discussions with counsel." (Doc. 143-8 at 6). Unlike in *Elosu*, this Court does not necessarily find that Dr. Vecchio's opinions are incorrect or inconsistent with the record. The Court finds instead that Plaintiff has not shown a proper basis or methodology for Dr. Vecchio's opinions. Accordingly, Dr. Vecchio's opinions on the scope of Defendant's duties under the Purchase Order must be excluded.

Still, the Court is largely not persuaded by Defendant's arguments for the exclusion of Dr. Vecchio's other opinions. First, Defendant argues that Dr. Vecchio's opinions should be excluded because he failed to consider possible alternative causes— specifically construction or fabrication defects— for the Recent Failures. (Doc. 143 at 12); *see Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) ("A district court is justified in excluding evidence if an expert 'utterly fails . . . to offer an explanation for why the proffered alternative cause' was ruled out." (citation omitted)). Plaintiff responds by highlighting excerpts from Dr. Vecchio's report and deposition in which he explains that it is the designer's responsibility to preclude the possibility of such failures "using a combination of structural analysis, connection detailing, and construction quality assurance." (Doc. 162 at 12–13 (quoting Doc. 143-6 at 6)). Defendant does not dispute that this assertion addresses possible alternative causes, but instead argues that "construction quality assurance" was unavailable to Defendant because the ride plates and studs were already fabricated when it became involved. (Doc. 164 at 7). Thus, Defendant essentially concedes that Dr. Vecchio considered possible alternative causes but disagrees with his conclusions. Such disagreement may be explored through cross-examination and other testimony, but it is not grounds for exclusion. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir. 1998).

Next, Defendant argues that Dr. Vecchio's opinions based on "common sense" should be excluded as unhelpful to the jury. (Doc. 143 at 16); *see McClellan v. I-Flow*

*Corp.*, 710 F. Supp. 2d 1092, 1136 (D. Or. 2010) ("It is well established that expert testimony is not helpful if it simply addresses lay matters which the jury is capable of understanding and deciding without the expert's help." (citation and quotation marks omitted)). But the Court agrees with Plaintiff that, when read in context, Dr. Vecchio's use of the term "common sense" during his deposition refers to the common sense of a professional engineer, not common sense possessed by a lay person. Thus, such testimony may be helpful to lay jurors.

Finally, Defendant argues for the exclusion of Dr. Vecchio's opinions that Defendant was negligent both because he fails to identify the applicable standard of care and because it is an improper opinion on an ultimate legal issue. With respect to the applicable standard of care, Defendant first argues that Dr. Vecchio "never meaningfully defines the standard of care applicable to a reasonable engineering firm acting in the same capacity as [Defendant]." (Doc. 143 at 15). Plaintiff's Response, however, identifies several professional engineering standards cited by Dr. Vecchio as the basis for his opinions. (Doc. 162 at 15–16). Defendant's Reply then makes a somewhat different argument: that Dr. Vecchio "ignore[s] the applicable standard of care established by the terms of the contract" between the parties." (Doc. 164 at 8 (emphasis omitted)). The applicable provision states that the standard of care under the contract is "the care and skill ordinarily used by members of [Defendant]'s profession practicing under the same or similar circumstances at the same time and in the same locality." (Doc. 143-7 at 37). Defendant's ultimate argument, then, is not that Dr. Vecchio did not cite any standard of care but rather that he applies the wrong one. But even if that argument can be considered to have been proper for the Reply brief, to the extent Defendant believes the professional standards cited by Dr. Vecchio—including standards promulgated by the American Association of State Highway and Transportation Officials, the American Society of Civil Engineers, the American Institute of Steel Construction, and the American Welding Society—are inconsistent with the standard of care under the contract, it may explore the issue at trial. But this Court does not find that Dr. Vecchio's citation to and application of

professional standards from several industry organizations render his opinions unhelpful or improper in light of the contract's fairly generic standard-of-care provision.

The Court will, however, preclude Dr. Vecchio from testifying that Defendant was "negligent." Defendant argues that such testimony embraces an ultimate legal issue. Under FRE 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." But the Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citation omitted). Thus, courts routinely hold that expert testimony as to whether a party was negligent is inadmissible. *See, e.g.*, *Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1179, 1185–85 (D. Alaska 2022); *Forney v. Hopkins*, No. CV 07-152-M-JCL, 2009 WL 106774678, at *6 (D. Mont. Mar. 26, 2009). To be sure, here, Plaintiff's claim is for breach of contract, not negligence. Still, "negligence" is a term that holds a specialized meaning in the law, *cf. Diaz*, 876 F.3d at 1198–99, and even if it weren't inadmissible as an opinion on an ultimate issue of law, Dr. Vecchio's use of the term "negligence" risks confusing the issues before the jury and is not helpful in a breach of contract case. *See* Fed. R. Evid. 403. Dr. Vecchio may testify to his opinions of whether Defendant's conduct met applicable standards, but he may not testify as to whether Defendant was "negligent." *See Forney*, 2009 WL 106774678, at *6. Accordingly,

**IT IS ORDERED** that Defendant HDR Engineering Inc.'s Motion to Exclude Opinions of Robert S. Vecchio (Doc. 143) is **granted in part** and **denied in part**. The Motion is **granted** as to Dr. Vecchio's opinions regarding the scope of Defendant's contractual duties and whether Defendant was "negligent," and the Motion is otherwise **denied**.

Dated this 13th day of July, 2023.

Honorable Steven P. Logan
United States District Judge

9